UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM PETAWAY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   C.A. No. 13-794S |
| | : |
| C/O PORTER, et al.,<br>    Defendants. | :<br>: |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      On December 23, 2013, Plaintiff William Petaway ("Petaway"), a prisoner held at the Adult Correctional Institutions ("ACI"), filed a hand-written *pro se* § 1983 Complaint against nineteen Rhode Island Department of Corrections ("DOC") employees and a Rhode Island State Police Detective, based on an incident at the ACI on June 21, 2013. Petaway contends that an ugly remark by a correctional officer escalated from an argument to a vicious assault by correctional officers. When the incident ended, he charges that the ACI nurse declined medical treatment and that his inhalers were removed after he was placed in a cell. With his Complaint, Petaway filed a motion for leave to proceed *in forma pauperis* ("IFP"), ECF No. 3, which has been referred to me.

      I recommend that Petaway's IFP motion be denied because he is a three-strike litigant. Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), IFP status is not available to a prisoner who has brought three or more cases that were dismissed for failure to

state a claim. Petaway qualifies as a three-striker based on the following cases filed in the District of Rhode Island:[1]

> Strike One: Petaway v. Aul, C.A. No. 11-665-M, slip op. at 8 (D.R.I. Apr. 26, 2012) (complaint dismissed for failure to state a claim based on Petaway's inability to properly allege a federal due process or statutory violation).
>
> Strike Two: Petaway v. Duarte, C.A. No. 11-497-ML, 2012 WL 1883506, at *7 (D.R.I. May 22, 2012) (defendants' motion to dismiss complaint granted as none of the allegations in Petaway's complaint state "a claim of constitutional dimension or a claim on which relief may otherwise be granted").
>
> Strike Three: Petaway v. DiNitto, No. CA 11-047-M, 2012 WL 2222204, at *4 (D.R.I. June 14, 2012) (case dismissed; Petaway's claims did "not demonstrate entitlement to any relief and therefore must fail when reviewed pursuant to Rule 12(b)(6)), aff'd, No. 12-1792 (1st Cir. Dec. 11, 2012), cert. denied, No. 12-9579 (U.S. June 10, 2013).[2]

The PLRA carves out an exception to the three-strike rule for a case alleging that the prisoner is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). To invoke the exception, two elements must be met: the harm must be imminent and the claim for relief asserted must be for the alleviation of that threat of harm. Judd v. United States, C.A. No. 06-10172-PBS, 2010 WL 1904869, at *3 (D. Mass. May 5, 2010) (citing Judd v. Fed. Election

---

[1] These three cases may be the tip of the iceberg: Petaway has filed a total of twenty-two cases in the District of Connecticut, some of which may qualify as strikes under PLRA. See Petaway v. Milling, 3:11-cv-00426-AVC (D. Conn. Mar. 17, 2011); Petaway v. Lantz, 3:09-cv-00034-MRK (D. Conn. Jan. 12, 2009); Petaway v. New Haven Police Dep't, 3:06-cv-00206-SRU (D. Conn. Feb. 9, 2006); Petaway v. DeStefano, 3:99-cv-02330-AWT (D. Conn. Nov. 29, 1999); Petaway v. Armstrong, 3:98-cv-02057-AVC (D. Conn. Oct. 21, 1998); Petaway v. Armstrong, 3:98-cv-01538-CFD (D. Conn. July 31, 1998); Petaway v. Rowland, 3:98-cv-01446-AVC (D. Conn. July 23, 1998); Petaway v. Armstrong, 3:96-cv-00723-AVC (D. Conn. Apr. 23, 1996); Petaway v. City of New Haven, 3:95-cv-00030-AVC (D. Conn. Sept. 7, 1994); Petaway v. Meachum, 3:94-cv-02151-AHN (D. Conn. Dec. 19, 1994); Petaway v. Corr. Dep't, 3:94-cv-01542-JBA (D. Conn. Sept. 8, 1994); Petaway v. New Haven Register, 3:94-cv-01338-AVC (D. Conn. Aug. 11, 1994); Petaway v. Meachum, 3:94-cv-01124-DJS (D. Conn. July 7, 1994); Petaway v. Meachum, 3:94-cv-01127-AVC (D. Conn. May 17, 1994); Petaway v. Henry, 3:94-cv-00208-PCD (D. Conn. Feb. 10, 1994); Petaway v. Meachum, 3:93-cv-02532-AVC (D. Conn. Dec. 22, 1993); Petaway v. Meachum, 3:93-cv-02533-AVC (D. Conn. Dec. 22, 1993); Petaway v. Meachum, 3:93-cv-02498-AVC (D. Conn. Dec. 16, 1993); Petaway v. New Haven Corr. Ctr., 3:93-cv-01368-TFGD (D. Conn. July 12, 1993); Petaway v. Bonzagni, 3:93-cv-01291-AVC (D. Conn. June 30, 1993); Perry v. Meachum, 3:93-cv-01293-PCD (D. Conn. June 30, 1993); Petaway v. New Haven Police Servs., 3:92-cv-00508-RNC (D. Conn. Oct. 27, 1992). With three strikes in the District of Rhode Island, I have not investigated whether any of the Connecticut cases are also strikes.

[2] Petaway filed another case in the District of Rhode Island on May 3, 2012; however, he filed a motion to dismiss that action, which was granted on June 22, 2012. See Petaway v. Henry, CA 12-330 ML (D.R.I. June 22, 2012).

Comm'n, 311 F. App'x 730, 731 (5th Cir. 2009)). If the danger is passed when the suit is filed, the imminent-danger exception is inapplicable – Congress "wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." Fletcher v. Menard Corr. Ctr., 623 F.3d 1171, 1174-75 (7th Cir. 2010). Further, the danger must be specific in nature, and amount to more than just fear that a physical attack could occur at some point in the future. Burgess v. Conway, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009). Rather, the inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Johnson v. Warner, 200 F. App'x 270, 272 (4th Cir. 2006) (per curiam).

Petaway's Complaint alleges a violent assault and lack of medical care in its aftermath; allegedly, he was pushed to the floor, his leg was twisted, his hands were cuffed tightly behind him, he was pepper-sprayed, choked, made to walk with his buttocks exposed and slammed into a steel door. Compl. ¶¶ 35-60. As a result, he was in pain, with a swollen eye and bleeding wrists, but the nurse who saw him initially said, "he is fine." Id. ¶ 61. He did not get his inhalers for his asthma until he was placed in a cell, but then they were taken away. Id. ¶¶ 64, 68. One of accused correctional officers allegedly acted (somewhat inexplicably) to get revenge on Petaway for laughing at a joke, while the nurse was motivated by pique at one of Petaway's lawsuits. Id. ¶¶ 50, 53, 70. The Complaint somewhat vaguely seems to allege that there was a practice among some of the named correctional officers of applying excessive force based on unspecified "revenge" during "Code Blue."[3] Id. ¶¶ 73, 82. In an affidavit filed on January 2, 2014, to

---

[3] "Code Blue" is an emergency code used in prisons which directs medical staff to assist correctional officers. See Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 111 (1st Cir. 2013) ("Code Blue" is a medical emergency requiring personnel on duty to respond to inmate's location within a certain time).

supplement his Complaint,[4] Petaway alleges that there was another incident on July 15, 2013, involving a different inmate who was also assaulted during a "Code Blue." ECF No. 4 ¶¶ 2-4. However, the affidavit makes clear that, with one exception, the group of correctional officers involved in the July assault are not the same as those accused by Petaway. More importantly, the July incident resulted in the arrest of the responsible correctional officer, who was placed on leave as a result. ECF No. 4, ¶ 5; ECF No. 4-1.

The imminent danger exception does not apply to this Complaint. First, the Complaint is based on an assault that occurred six months before it was filed. The only allegations from which an inference might be drawn that the incident might recur are those referring to a practice of using excessive force during a "Code Blue." However, those allegations also establish that the incident in July led to a harsh institutional reaction resulting in the arrest of the officer; thus, far from condoned, the Complaint establishes that the ACI condemned the practice. There is no allegation that the practice continued after that arrest. Accordingly, this Complaint not only fails to allege specific imminent danger, but permits the affirmative inference that whatever danger may have existed is over. Finally, Petaway's claim for relief does not include a demand that the alleged threat of physical harm be alleviated; instead, he seeks monetary damages, as well as the firing and criminal prosecution of Defendants.

As a three-strike litigant under PLRA, Petaway's motion to proceed IFP should be denied.

Based on Petaway's motion to proceed IFP, I have screened Petaway's Complaint as required by 28 U.S.C §§ 1915(e)(2), 1915A. Based on that review, I conclude that the claims against some of the Defendants and the claim for deliberate indifference to serious medical needs

---

[4] While this affidavit was filed after the Complaint, mindful of Petaway's status as a *pro se* litigant, I have treated it as part of the Complaint.

are subject to dismissal for failure to state a claim upon which relief may be granted pursuant to both provisions; accordingly, I recommend that these claims be dismissed.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Corrections officials often make decisions in haste and under pressure, but they may not use excessive physical force against prisoners. Id.; Hudson v. McMillian, 503 U.S. 1, 6 (1992). The core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (per curiam). When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evident; otherwise, prison officials could inflict any physical punishment, no matter how diabolic or inhuman, as long as it was less than some arbitrary quantity of injury. Id. at 1178. When the allegations plausibly permit the inference that force was applied "maliciously and sadistically to cause harm," the claim survives. See Hudson, 503 U.S. at 7; Lyons v. Wall, C.A. No. 08-498-M, 2012 WL 3682983, at *8 (D.R.I. Aug. 24, 2012).

Here, the assault incident, as alleged, meets this minimal standard. Accordingly, the claims against CO Porter, CO Blain, CO Mason and CO Santiago, all of whom are alleged to have participated, should survive screening.

Unlike the claims based on the assault, the claim that Petaway did not receive adequate medical care following the incident does not rise to the level that implicates a constitutional violation. The Eighth Amendment prohibits prison officials from deliberate indifference to an inmate's serious medical needs. Hodge v. Murphy, 808 F. Supp. 2d 405, 409 (D.R.I. 2011) (citing Farmer, 511 U.S. at 834). Determining whether an official acted in violation of such

prohibition requires both an objective and subjective inquiry.  Id. (citing Farmer, 511 U.S. at 827; Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005)).  First, the prisoner's medical need must be objectively serious, involving a substantial risk of serious harm if not properly treated; second, the prison official must have had subjective awareness of the inmate's need and consciously disregarded a substantial risk of serious harm.  Farmer, 511 U.S. at 837.  This standard has been compared to the standard for determining criminal recklessness.  Hodge, 808 F. Supp. 2d at 409 (citing Giroux v. Somerset Cnty., 178 F.3d 28, 32 (1st Cir. 1999)).  It is important to note, however, that not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.  Hodge, 808 F. Supp. 2d at 409.

The Complaint fails to allege an objectively serious injury.  After the assault, Petaway claims he was taken to the hospital, photographed to record the scope of his injuries and taken to a cell without being provided any medical care and was only given his inhaler briefly before it was taken away.  There is no suggestion that a substantial risk of serious harm was caused by these events.  Accordingly I recommend that all claims arising from inadequate medical treatment (and all claims against Medical Nurse Dick and Medical Program Director Vohr) should be dismissed.

The thirteen remaining Defendants fall into two groups.  Two of them (CO Manning and CO Duarte) do not appear to have anything to do with any actionable conduct; all claims against them should be dismissed.  See Compl. ¶¶ 33, 48.  The rest of them (Lt. Gallo, Lt. Sayles, Deputy Leach, Warden Weeden, Chief Inspector Catlow, Inspector Wells, Grievance Coordinator McCutcheon, DOC Director Wall, Lt. Tierney, Lt. Macomber and R.I. State Police Det. Salisbury) are alleged merely to have been aware of the assault, but to have taken no action.  This is not enough.

"Section 1983 claims do not impose purely supervisory liability." Cordero-Suárez v. Rodríguez, 689 F.3d 77, 82 (1st Cir. 2012). Rather, § 1983 "aims at persons who have actually abused their positions of authority . . . ." Cordero- Suárez, 689 F.3d at 82 (quoting Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007)). The law is clear that § 1983 liability may be imposed on a supervisor only: (1) if the supervisor is the primary violator or direct participant in the alleged rights-violating incident or (2) if the responsible official supervises, trains, or hires a subordinate with deliberate indifference to the possibility that deficient performance may eventually result in a civil rights violation. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); Flores v. Wall, No. CA 11-69 M, 2012 WL 4471101, at *9 (D.R.I. Aug. 31, 2012). "[N]ot every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." See Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). With no allegations that these Defendants were either primary actors or direct participants and no allegations demonstrating an affirmative link between the behaviors of a subordinate and the action or inaction of any of them such that their conduct led inexorably to the alleged constitutional violations, all claims against them should be dismissed. Flores, 2012 WL 4471101, at *9-10 (dismissing Director and Assistant Director of Department of Corrections from § 1983 claims because plaintiff did not allege that either was primary actor or direct participant in events).

In light of the foregoing, I recommend that the motion for leave to proceed *in forma pauperis* be DENIED. Further, I recommend that all claims based on allegations of indifference to serious medical needs and all claims against Defendants Medical Nurse Dick, Medical Program Director Vohr, Lt. Gallo, Lt. Sayles, Deputy Leach, Warden Weeden, Chief Inspector Catlow, Inspector Wells, Grievance Coordinator McCutcheon, DOC Director Wall, Lt. Tierney,

7

Lt. Macomber and R.I. State Police Det. Salisbury be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (dismissal of suits that fail to state a claim on which relief may be granted) and 28 U.S.C. § 1915A (dismissal of suits against governmental officers because they fail to state a claim on which relief may be granted), with leave to file an Amended Complaint that addresses the deficiencies identified in this report and recommendation within thirty days of this Court's adoption of it.  Brown v. Rhode Island, No. 12-1403, 2013 WL 646489, at *6 (1st Cir. Feb. 22, 2013) (per curiam).  I further recommend that Petaway be ordered to pay the filing fee within thirty days of this Court's adoption of this report and recommendation.  If he fails to do so, I recommend that his Complaint be DISMISSED.

Any objection to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 21, 2014